## McPHERSON v. McPHERSON.

1. This court will not consider alleged refusals to charge when the requests and refusals so to charge nowhere appear in the "Case," but only in the exceptions.

2. At a sheriff's sale an attorney gave notice that the land was claimed by his client, a third person, saying he held in his hands two deeds for this land. On being asked by A permission to see them, he refused, saying, "They are on record." A then purchased the land. As recorded, one of these deeds was without seal, but the original was sealed. *Held*, that A was not remitted by the attorney to the record as a substitute for the actual notice given, and was therefore not a purchaser without notice. McIver, A. J., concurring in result.

3. A party, indebted to several persons, conveyed a tract of land to his sister, in payment of two notes given for gold borrowed several years before, and at the date of his deed barred by the statute of limitations. *Held*, that adding to the notes the premium on gold at the time they fell due, and paying the notes when barred, were not badges of fraud.

4. In charging the jury that a consideration, as to the adequacy of which persons may differ, will not avoid a deed on the ground of inadequacy, but that it must be a grossly inadequate consideration to be a badge of fraud, the Circuit judge committed no error.

5. When an insolvent brother had conveyed his home place to his sister, in payment of an antecedent debt, and a few days afterwards the sister reconveyed to a trustee in trust for the wife and children of such brother, who continued to occupy the place, the judge charged that, if the deed to the sister was made without agreement for the reconveyance, and was not induced by her promise to reconvey, but was really in satisfaction of the debt, the deed would not be avoided, even though the brother expected that his wife and children would receive some donation from his sister. *Held*, that in this there was no error.

6. If after such reconveyance the brother remained in possession by permission of the trustee, managing the property as agent for his wife and children, his possession was the possession of the wife and children, and would not avoid the deed.

7. In charging a jury, the judge may arrange and classify the testimony, and in doing so, much must be left to his discretion. It cannot be declared error of law that the judge, in the opinion of counsel, stated the facts on one side with more fulness, clearness, and emphasis than he did on the other.

Before PRESSLEY, J., Marion, October, 1883.

The opinion fully states the case.

*Messrs. G. W. Dargan, J. J. Ward,* and *C. A. Woods,* for appellant.

The charge of the presiding judge was a violation of the constitution, art. IV., § 26. 16 *S. C.*, 148, 629; 15 *Id.*, 392; 18 *Id.*, 108. The facts here proved fraud, and Miss McPherson and those claiming under her took nothing. *Gen. Stat.*, § 1786; 1 *Hill*, 380; 2 *Bail.*, 324, 118; 1 *Hill*, 24; *McMull. Eq.*, 31; 1 *Hill Ch.*, 304; 2 *Id.*, 34; 2 *Bail.*, 205; 4 *S. C.*, 257; 16 *Id.*, 610. Notice, to supply the want of registration, must be full, explicit, and clearly proved. *Speer Eq.*, 212; 3 *Strob.*, 266, 565; 6 *Wall.*, 91. Notice that defendants had title was not actual notice of the existence of the deed, and was constructive notice only of what the record showed. 2 *Pars. Cont.*, 671. Plaintiff having asked to see the deed and been refused, had no further means of acquiring the knowledge desired, and therefore had no notice, actual or constructive. On the record there was no seal. She pursued her inquiry, but was refused an inspection of the original. Her means of information were therefore exhausted. 6 *Rich. Eq.*, 181; 7 *Id.*, 519; 10 *Id.*, 149; 37 *Wisc.*, 449; 46 *Mo.*, 472.

*Messrs. W. W. Sellers* and *Johnson & Johnson,* contra.

August 15, 1884. The opinion of the court was delivered by MR. JUSTICE McGOWAN. C. E. McPherson owned a tract of land, containing 818 acres, known as his "Home place," and also another tract known as the "Willow Creek place." He was in debt, owing his sister, E. Ann McPherson, two promissory notes, one bearing date in January, 1867, for $444, and the other a few days after, in May, 1867, for $245. These notes were given for gold borrowed at the dates indicated. C. E. McPherson also owed a large debt to Wm. K. Ryan, secured by a mortgage of the Willow Creek place, about $2,500 to Samuel McPherson as administrator, and about $800 to Samuel McPherson individually.

On January 4, 1876, more than six years after the notes for

the gold bore date, a statement of Miss McPherson's debt was made, which, adding a premium of 30 per cent. for gold, and counting the interest at what was then customary, 12 per cent., amounted to $1,850; and in payment and satisfaction of this debt, C. E. McPherson conveyed to his sister the Home place aforesaid by deed bearing date January 4, 1876, which was recorded on January 8, 1876. The said Miss Ann McPherson, on January 7, 1876, in consideration of her love and affection for the wife and children of her brother, C. E. McPherson, and the nominal sum of $10, conveyed the said land to J. P. Gregg, as trustee for them. Jerome P. Chase drew both deeds—that to Miss McPherson and hers to Gregg, trustee. Miss McPherson wanted her debt settled, and the land conveyed for the benefit of her brother's wife and children, so that he could no more endanger it by his bad management. C. E. McPherson said he expected to remove to Willow Creek, which was mortgaged to Ryan, but concluded to remain on the Home place after he learned that it was conveyed for the benefit of his wife and children; and he with his family did remain upon it. It seems that the record of the deed to Miss Ann McPherson had no seal attached, but the deed itself, the original, had a seal.

At the time of these transactions, C. E. McPherson had not been sued; but afterwards, on October 30, 1881, Samuel McPherson, as administrator, recovered a judgment against him for $2,626.61; and under the execution based on this judgment, the said Home tract of land was levied and sold by the sheriff, as still the property of the defendant in execution. On the day of sale, Mr. Sellers, as attorney for defendants, forbade the sale, on the ground that C. E. McPherson had previously sold and conveyed the land. Before the sale, when asked to show the deeds, he declined, saying that they were "on record"; but when he gave notice of the title of the defendants, he had both deeds, the originals, in his hands. The sheriff sold, and Mrs. Frances A. McPherson bid off the land for $100, took sheriff's title and brought this action against C. E. McPherson and his wife and children and their trustee, Gregg, to recover the premises.

Much testimony was offered on one side to impeach the *bona fides* of the deeds to and by Miss Ann McPherson, and on the

other to sustain them. Under the charge of the judge the jury found for the defendants, and the plaintiff appeals to this court upon the following exceptions:

I. Because his honor refused to charge the following propositions:

1. "If the plaintiff did not have actual notice of a duly executed deed, she stands in the position of a purchaser for valuable consideration without notice, and the verdict should be for the plaintiff.

2. "The statement by the defendant's attorney, at the sheriff's sale, referring to the record, which was without a seal, and refusing at the same time to allow the plaintiff's attorney to inspect the original papers then in his hands, does not affect the plaintiff with notice of a duly executed deed, and the verdict should therefore be for the plaintiff.

3. "To defeat the plaintiff's recovery, notice of the deed must be proved, other than the record and the statement made at the sale by the defendant's attorney.

4. "If the defendants had a valid title, derived from C. E. McPherson, and refused to supply the defects in the records by allowing the plaintiff to inspect the deed before her purchase, they are now estopped from setting it up against her.

5. "A deed is fraudulent when made to defeat the collection of a debt, and the law implies fraud—(1) When the property is immediately reconveyed for the benefit of the debtor's family. (2) When an absolute conveyance is made in payment of an antecedent debt. (3) When the debtor and grantor remains in possession of the property conveyed. (4) When there is a reconveyance to a trustee for the benefit of the debtor's family, and the trustee and all parties concerned totally disregard and ignore the terms of the trust deed, and the debtor retains the possession and management of the property without any contract with the trustee, and without any accountability to him.

6. "If C. E. McPherson retained possession of the land in dispute, using it as her own, after he had conveyed it to his sister, E. A. McPherson, in consideration of a pre-existing debt, he being at the time heavily in debt, the law infers fraud, and the inference is incapable of being rebutted by proof.

II. "And his honor erred in charging the jury:

1. "That the notice given by Mr. Sellers at the sheriff's sale was sufficient.

2. "That the consideration in this case must be grossly inadequate to constitute a badge of fraud.

3. "That even where a deed is made by a debtor in payment of an antecedent debt, for the purpose of defeating other creditors, the deed is valid unless the grantee was a party to the fraud.

4. "That the adding of thirty per cent. premium for gold, and the calculation of interest at twelve per cent. per annum on notes which were not payable in gold, which expressed no rate of interest, and which may have been barred by the statute of limitations, do not of themselves constitute badges of fraud.

5. "That the proof was that Miss McPherson frequently applied for payment, and C. E. McPherson frequently promised to pay. .

6. "That Miss Ann McPherson did not know of the indebtedness of C. E. McPherson at the time of the execution of the deed.

7. "That in order to avoid the deed of C. E. McPherson to his sister, there must be not only an expectation on his part, but an express promise that she should reconvey for the benefit of his family.

8. "That it was a fulfilment of the terms of the trust deed, and not a badge of fraud, for C. E. McPherson to remain in the occupation and enjoyment of the land, if he remained there, not claiming it as his own, but in right of his wife and children.

9. "Because his honor erred in charging the jury—(1) In stating fully, and in the strongest possible terms, all the testimony relied on to show that the consideration of the deed was *bona fide* and adequate, while he stated very incompletely and in the weakest possible light the testimony tending to show the inadequacy of the consideration, thus intimating his own estimate of the testimony on the subject. (2) In intimating to the jury that the deed from C. E. McPherson to his sister, and from her to J. P. Gregg, trustee for his wife and children, were not parts of the same fraudulent transaction, and in stating as strongly as possible all the testimony relied on to show that there was no understanding that the land should be reconveyed for the benefit

of McPherson and his family, while none of the testimony tending to prove the fraudulent transaction was stated. (3) In stating in the strongest possible way all the testimony in behalf of the defendants, in explanation of C. E. McPherson's possession, while no allusion is made to the testimony on behalf of the plaintiff on this point.

10. "Because the presiding judge erred in charging the jury with respect to all matters of fact involved in the controversy and submitted to their determination.

11. "Because the judge charged the jury that if they believed C. E. McPherson remained in possession of the land in dispute, working it as the agent of his wife and children, by permission of the trustee, such possession would not be a badge of fraud, though there was no pretence that the so called trustee ever gave such permission, and no testimony whatever going to show that the so-called trustee had any knowledge even of the existence of the so-called trust deed.

12. "Because, although the judge undertook to state to the jury all the material testimony, he omitted to allude even to the uncontradicted testimony of J. P. Chase, a witness for defendants, as well as of the plaintiff, which testimony was to the effect that about the time of the so-called deed from C. E. McPherson to Ann McPherson, the said C. E. McPherson told the witness that his reason for executing the so-called deed was, because he was afraid that the Willow Creek place would not sell for enough to pay Ryan's mortgage, and Ryan was mean enough to sell his other property."

This is an action at law for the recovery of a tract of land, and the question involved being one of alleged fraud, and the testimony somewhat conflicting, it was peculiarly proper for the decision of a jury. This court has no jurisdiction to review the testimony and weigh its force and effect, but only to consider alleged errors of law in the charge of of the judge.

As to the error of law charged on the part of the judge in refusing certain requests to charge. These alleged requests are printed in the brief, but among the plaintiff's exceptions. They are not in the "Case" prepared for this court. The judge makes no allusion whatever to them in his charge, which fortunately touched all

the points of the case and is reported in full. Under these circumstances we are not authorized to consider that these requests were regularly made and refused by the judge. It is a rule absolutely necessary to the proper and satisfactory dispatch of the large business of this court that nothing can be considered here except what appears in the official record. Exceptions of counsel and the argument thereon, as we have repeatedly held, are no part of the "Case," but in their nature must be *ex parte*. As was said in the case of the *State* v. *Wilder*, 13 *S. C.*, 347: "It must be manifest to every one that we have no right to decide a case upon facts which do not appear in the record, and can only be learned from *ex parte* statements of counsel made in the argument;" and see the case of *Thompson* v. *Thompson*, 6 *S. C.*, 279.

It was stated at the bar, that the requests were read in court, but it seems, not until after the judge had made his charge to the jury, and that he took no notice of them. We suppose the judge, having charged the jury on all points deemed necessary, was unwilling to repeat what he had already said to the jury. Rule XI. of the Circuit Court requires that "all requests for instructions to the jury shall be submitted to the court in writing, without comment, by counsel on either side, at the close of the arguments." Fortunately, from the charge being printed in full, it appears that the judge did charge on all the points indicated in the paper containing the requests, and also what he charged, so that the objections made can be considered under the exceptions to the charge.

Exception I. complains that the judge charged that the notice given by Mr. Sellers at the sheriff's sale was sufficient. On that subject the judge charged as follows: "Was not Mr. Sellers' notice sufficient notice to her? The testimony is, Mr. Sellers appeared at the sale with two papers in his hands, and gave notice that he had two papers in his hand conveying that property, and forbade the sale. The attorney for the plaintiff, Mr. Woods, approached Mr. Sellers and said, 'Let me see the deed.' Mr. Sellers petulantly refused and said, 'They are on record.' I do not think that is such a reference to the record as to bind Mr. Sellers to the notice there given. The inclination of my opinion is, that a verbal notice was sufficient at that sale. I don't remember any case in which I have given such notice. At all events,

having no light upon the subject, I now charge you that the verbal notice of Mr. Sellers, that the land had been conveyed, was sufficient notice to put the party on the inquiry. It would not have been so if Mr. Sellers had referred him to the record under such circumstances as would have bound him to what the record said. If his intention was to stand by the verbal notice, he had a right to do so, and his verbal notice was sufficient," &c.

We suppose that the seal on the deed to Miss McPherson, having been omitted on the registry book, the record furnished no notice of that deed; or rather, the record gave notice of a paper as it was on record, that is to say, of a paper which was no valid conveyance. This, however, was no fault of Miss McPherson and did not actually avoid her deed, which had a seal. But the effect was the same as if there had been a total failure to record it. It is too well settled now to be controverted that express notice of a deed will stand in the place of recording as to all persons claiming to be subsequent creditors or purchasers. *Tart* v. *Crawford*, 1 *McCord*, 265; *McFall* v. *Sherrard, Harper,* 295; *Knotts* v. *Geiger*, 4 *Rich.*, 34; *Barr* v. *Kinard*, 3 *Strob.*, 73; *Reeves* v. *Sims*, 10 *S. C.*, 308.

It is urged, however, that this was not explicit notice, that it was not sufficient for Mr. Sellers to stand up with two deeds (originals) in his hands, and saying "that he had two papers in his hands, conveying that property, and forbade the sale." We think this was sufficient notice to all present not to buy the property—that it was claimed by others. Could any one present and buying after this notice, properly claim that he had purchased without notice ? We do not think so. As was said by Judge Withers in *Barr* v. *Kinard, supra,* "The notice required under former acts has been characterized in *Tart* v. *Crawford*, as necessary to be 'actual' and 'explicit.' But notice of what? Scarcely of the particulars, but rather, it seems to us, of the fact that there was an existing lien, of a particular description, in favor of a certain party, upon the property, in the view of one about to become subsequent creditor or purchaser. Would not this subserve all the purposes supposed to be in contemplation of the law, the leading end being to admonish the purchaser or creditor of a snare ?" In the case of *Reeves* v. *Sims, supra,* it

seems to have been held sufficient simply to forbid the sheriff's sale.

But admitting that the notice was sufficient generally, it is insisted that it was not sufficient as to the plaintiff, for the reason that at the sheriff's sale her attorney asked Mr. Sellers "to let him see the original deeds," and Mr. Sellers refused, saying, "They are on record"; that the plaintiff is not, like others present, bound by the notice of the original deeds in the hands of Mr. Sellers, but can say that she had no notice whatever except that afforded by the imperfect registry; that the clients of Mr. Sellers, so far as the plaintiff is concerned, lost all benefit of the actual notice by his saying, "They are on record." It seems to us that this would be a narrow construction and not required by the facts of the case. There is no evidence that Mr. Sellers knew that the record was imperfect, or that, by making the statement that the deed was on record, he meant to substitute that record, whether true or false, for the actual notice he was then in the act of giving. If it had been the intention to rely upon the record as constructive notice, there would have been no need of the actual notice then given. We suppose that, by the statement, "They are on record," Mr. Sellers meant no more than to give a sort of reason for withholding the originals.

It is very apparent that the plaintiff did have actual notice that there was a claim of title to the land under an alleged conveyance. It is not claimed that as to the existence of such paper she was without notice; but, assuming the perfect correctness of the registry, she proceeded on the ground, the legal theory, that the deed was void for the want of a seal. It turned out that in this she was mistaken, or it may be misled—not, however, with the knowledge and consent of the defendants, or by any intentional act on their part, but by the accidental omission in the registry of the deed. It was probably as great a surprise to the defendants that the record was without seal as it was to the plaintiff that the original had a seal. Under the charge of the judge, the jury found that Mr. Sellers "intended to stand by his verbal notice, and not to adopt the notice afforded by the record," and we cannot say that such notice was insufficient.

Exceptions 2, 3, 4, 5, 6, 7, and 8 complain of the judge's

charge on the different badges of fraud, which makes it necessary to ascertain what he did charge on the different points indicated.

(1) As to the manner in which the gold debt of Miss Mc-Pherson was ascertained, the judge charged as follows: "The question is, was there any fraud in computing that transaction by adding 30 per cent. as a premium for the gold? You have heard the testimony, and you must judge that for yourselves. If that was the premium upon gold at the date, one day after the day of lending, and if the law in reference to the computation of the value of Confederate money is to govern in the matter, then the adding of 30 per cent. to the money was not unfair and unlawful in him; but if, on the contrary, that was an after-thought, if you come to the conclusion, from all the circumstances, that in 1876 that matter was arranged for the purpose of raising the supposed amount of the consideration, then the adding of that in order to make the consideration look large would be a badge of fraud." We cannot say this was error, or that there was error in reference to the statute of limitations. C. E. Mc-Pherson was under no moral obligation to plead the statute against his sister, even if he could have done so. *Weinges* v. *Cash*, 15 *S. C.*, 44.

(2) As to the alleged inadequacy of the consideration, the judge charged: "Another badge of fraud is the inadequacy of the consideration. Well, upon that point my opinion is that a consideration about which persons may differ as to whether it is adequate or otherwise is not such a one as will avoid a deed. The term used is 'grossly inadequate consideration,' &c. It must be a consideration so far short of the value of the property as to arouse a presumption in the mind that the person who takes that property takes it under some kind of secret trust. When property is conveyed for a grossly inadequate consideration, then that becomes a strong badge of fraud, and one which warrants the jury it setting it aside," &c. It seems to us that this ruling was in conformity to the settled law.

(3) As to the second conveyance for the benefit of the wife and children of the vendor, C. E. McPherson, and the effect of his remaining in possession after the execution of the deed to his sister, the judge charged as follows: "This is a conveyance by

one in debt to a creditor for a precedent debt, and although the law says very clearly that a debtor who cannot pay all his debts may appropriate his property so as to pay those whom he prefers to pay, yet he cannot do so lawfully if the consideration of his doing so is that he is to receive some benefit for himself. In other words, where a man owes another a debt, and his creditors are about to take his property, and he goes to that creditor and arranges with him, saying, 'I will make a preference to you if you will allow me to use the property and keep it, or if you will allow me to hold it until I can buy it back'—all arrangements of that kind are looked upon as fraudulent. Inasmuch as such arrangements cannot always be proved—generally they are hard to be proved—the law says that certain things shall be regarded as evidence, as badges of fraud. * * * It will hold not only that the debtor himself intended to defraud, but concludes that the debtor remaining in possession, the creditor also was a party to the fraud, and therefore they are both tainted with the fraudulent matter, and the deed will be set aside because both debtor and creditor intended to defraud. That is one badge of fraud, and is regarded as a conclusive badge of fraud. * * * One of these deeds was executed on January 4th and the other on the 7th, and both recorded on the same day. Are they now the same transaction? In other words, was the whole thing agreed upon between them before the first deed was executed? If it was so agreed upon as that the making of the second deed was a part of the consideration of the first, then that is such a badge of fraud as will avoid the transaction; but if it was not a matter agreed upon, if he really made this deed to his sister in order to satisfy that debt with her, and she received it in settlement of the debt, without intending at that time to make his wife and children her beneficiaries in reference to that land, the deed should not be avoided, unless that matter was communicated to him as a motive for making that deed. In other words, the mere expectation on his part that his wife and children might receive some donation from his sister would not make the deed void," &c. We cannot say that this was error. It will be observed that the land was not reconveyed to the vendor himself, but to a trustee for the benefit of his wife and children.

In regard to his remaining in possession, the judge charged: "Did he remain there in his own right, retaining possession of the property as he did before, or did he remain there with his wife and children with the permission of the trustee, he managing the property as the agent of his wife and children, as any other husband would have done under the circumstances? If so, then it was the possession of the wife and children," &c. This seems to us to be in conformity to the doctrine of *Jones & Briggs* v. *Blake & wife*, 2 *Hill Ch.*, 629, where it was held that "the decision in *Smith* v. *Henry*, 1 *Hill*, 16, that a debtor in giving a preference by conveyance of his property to one creditor over another, shall not secure an advantage to himself at the expense of creditors as the price of such preference, means a certain direct benefit or advantage to be derived from the use of the property. And therefore where a debtor transferred slaves to his daughter in satisfaction of a precedent debt, and retained possession of them under an agreement to pay hire, the conveyance was held to be valid, and was sustained against the other creditors. If the possession is satisfactorily explained, it will not necessarily avoid the deed. *Pregnall & Bro.* v. *Miller & Kelly*.[1]

But assuming that the law was charged correctly, all the other exceptions complain that the Circuit judge violated art. IV., § 26, of the constitution, in charging the jury "in respect to matters of fact." No particular words or phrases are pointed out as constituting the alleged violation; but an opinion is expressed that the judge, in charging upon the different alleged badges of fraud, "stated fully and in the strongest possible terms" all the testimony in favor of the defendants, while he omitted to call the attention of the jury to some evidence tending to favor the view of the plaintiff, and that which he did state was referred to "very incompletely and in the weakest possible light," &c. As was said in the case of the *State* v. *Summers*, 19 *S. C.*, 94, "there is no more difficult duty imposed upon this court than that of deciding questions arising under this section of the constitution, the chief difficulty arising from the vague nature of the subject, as to what is properly embraced in the right 'to state the testi-

---

[1] This case will be found at a subsequent page of this volume.

mony.' Who can fix with certainty the exact limit and apply it to the infinite combination of circumstances which may exist?"

But there are some general boundaries. It has been decided more than once that the Circuit judge has the right to arrange and classify the evidence under proper heads, in order that the jury may properly judge of its force and apply the law. *Benedict* v. *Rose*, 16 *S. C.*, 629. It has also been recently decided, even in a state case, that there is no rule requiring the judge "in summing up" to make express reference to all the evidence in the case on pain of having the verdict set aside. As admonished by numerous decisions of this court, the Circuit judge should not in any way indicate his opinion of the facts to the jury; but he has the right to arrange the testimony, and in doing so something must necessarily, from the nature of the case, be left to the judgment and impartial discretion of that officer who is personally present, and before whom the testimony is offered. If desirable, 'it would not be practicable to take an absolute control over that discretion, which properly exercised and in due subordination to the rule of the constitution is beyond the reach of this court. It would be said in every case that important testimony had been omitted.

We cannot declare it error of law that counsel are of opinion that in referring to the evidence thought to be important the Circuit judge stated it with more fulness, clearness, and emphasis on one side than on the other. Opinions of opposing counsel would not be likely to agree upon that subject. Most of the questions of fact were so evenly balanced that differences of opinion might well be entertained. They were delicate in their nature, and properly for the jury, which, under a long and careful charge, has decided them; and we see no error of law so gross as to justify us in setting aside the verdict and reopening this family controversy.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE McIVER. I concur in the result, but I cannot

agree to what is said in the opinion in reference to the notice given at the sale by Mr. Sellers, on behalf of the. defendants.  If he had simply contented himself with forbidding the sale, or giving verbal notice that the land had been previously conveyed, the notice would, as held in *Reeves* v. *Sims*, 10 *S. C.*, 308, have been sufficient.  It would have put a purchaser upon the inquiry, and that would have been sufficient, as is held in numerous cases. The purchaser then would have been regarded as affected with notice of whatever facts such inquiry, properly prosecuted, would have disclosed.

But when such inquiry was commenced, as it was by Mr. Woods, in behalf of the plaintiff in this case, asking for an inspection of the deeds, and the inquirer was misled, whether intentionally or not, is of no consequence (and knowing Mr. Sellers well, I would not think of imputing to him an intention to deceive), then the inquirer can only be regarded as having notice of such facts as could be discovered by pursuing the channel pointed out to him by the party giving the notice.  Mr. Sellers having declined, on request, to permit an examination of the original deeds, and having said they were on record, in effect referred Mr. Woods to the record for the information he was seeking, and Mr. Woods and his client could only be regarded as having such knowledge as the record furnished.

I do not see how any other view can be taken of the effect of Mr. Sellers' reply to the request of Mr. Woods.  It seems to me that it is the same as if he had said, "I will not allow you to see the original deeds, but here are copies of them which you can look at;" and surely if the copies had no seals to them, Mr. Woods could only be regarded as affected with such knowledge as the copies furnished.  So here, when he was referred to the record, as I think he unquestionably was by the reply of Mr. Sellers, he can only be regarded as having such notice as the record would afford.  It seems to me, therefore, that the plaintiff in this case, through her attorney, can only be regarded as having notice that C. E. McPherson had undertaken to convey to his sister the land in question by a paper purporting to be a deed, lacking the essential requisite of a seal.  Now, while such a paper would not be sufficient to pass the legal title, yet it might be sufficient to create

an equitable title in Miss Ann McPherson, and notice to the plaintiff, through her attorney, of such an equity would be sufficient to defeat her claim of being a purchaser for valuable consideration without notice. For this reason I concur in holding that the notice was sufficient.

Judgment affirmed.[1]